Chief Judge, Judges, may it please the Court, I am James Kilbourn, appointed under the CJA, and I will be joined by Allie Hallmark from the Constitutional Law Center for Muslims in America. We together jointly represent Alexander Samuel Smith. I want to start by giving you a roadmap of our shared argument. In this argument, there are two key questions for each count. The first question is, did the government prove that it was a lie? The second question is, if so, did the government prove it was material? I'll be addressing the first question, and Ms. Hallmark will be addressing the second. The Supreme Court in Braunston has held that precise questioning is an imperative to show that a defendant made a false statement. If an answer is unresponsive, the responsibility is on the questioner to ask follow-up questions to resolve that ambiguity. The Ninth Circuit stated more emphatically, a defendant cannot be punished because the government official asked the wrong question in Aquino. Further, the Court of Good agreed with the Third Circuit in Castro that a defendant may not be convicted of knowingly making a false statement in violation of Section 1001 if his statement is literally true, no matter what the defendant's subjective state of mind may have been. In this argument, we intend to show that the government has failed to provide sufficient evidence to support a conviction in Count 1 because of the FBI's muddy ellipses ridden questions, and the defendant's vague, contradictory, and unresponsive answers are on the whole ambiguous. And the government has failed to provide sufficient evidence to support the conviction on Count 2 because the statements made about the actions related to the nonexistent Mohammed Hillel are literally true. First, I'd like to turn to the questions asked in Count 1. Turning first to Count 1, which alleges that the defendant falsely stated to FBI agents then investigating a matter involving international terrorism that he had never discussed his desire or plans to travel to Syria. But if you look at Joint Appendix 797, the questions that were raised in the indictment are, number one, have you ever talked with anyone about, there's a pause, that you've expressed to someone that you I, I, I've told them that I wish there was something I could do for people, but I've never had any plans or made any plans to do anything. And then they ask a second question. Have you ever, pause, talked with anyone that you wanted to go to Syria and join ISIS? Smith replies no, but he doesn't stop there. He says, we've talked. Like, I've talked to numerous men. You have to understand, the Muslim community, there's stuff, so much stuff going on right now in the Muslim community with everything. We've talked about any and everything. If ISIS comes up, we say something about ISIS. If another group comes up, but you know at the time, we'll say something about them. It's not like I've expressed any plans that I want to support any group or any people. You get what I'm saying? I just, I just want to be a normal American citizen, man, and live my life. Counsel, could I just, while you have two minutes left, could I just clarify, are you, are both of you prepared to address the multiplicity and entrapment issues, or do I need to address any questions about that to one particular person? Neither one of us had included that as part of our main argument. We'll certainly be willing to answer any questions that you have about that, sir. If I had questions, so either one of you? Okay, that's fine. Thanks. Either one of us. Mr. Kilhorn, can I? Yes, sir. So, would it be appropriate to consider the, I mean, these questions weren't asked in isolation, right? It was in the context of a much broader discussion between the agents and your client. So, does context somehow clarify what, admittedly, are not the best phrased questions? And I think it's quite the opposite. I think actually, the context makes them even more ambiguous, because there was a number of questions asked, a number of different answers given. And I think the judge, the court, correctly stated in the instructions when they say, to which that a statement is false, the government must negate any reasonable interpretation that would make the defendant's statement factually correct. So, I think you look at the entirety under Braunston, you look at the entirety of the questioning, and you say, what do you come out of that questioning with? Was he telling a misstatement, or was it just so ambiguous and vague in this particular matter, which we argue it is, so ambiguous and vague that it just simply did not constitute a false statement that was knowingly made by the defendant? I'm not sure that the, well, maybe you did, but so, does context matter? Or you say that even if it does, it just doesn't help in this case? No, I think you're right. Context matters, and it actually hurts the government in this case. Okay. Why is that again? The more questions you look at, the more ambiguous the answers seem. Well, I mean, certainly, but his responses certainly suggested that he had some engagement with people and had seriously considered, or at least talked about going overseas to do something. So, do we or do we not consider those additional responses in deciding whether or not the response to this admittedly ill-phrased question was in fact false? I believe, in fact, you can look at the answer to the second question, and he says both no and I've talked about people that I have plans to go. So, he answers both no and yes in the same answer. So, I think if you look at the context of all the statements made in the FBI interview, it actually becomes clearly ambiguous and clearly vague that he didn't give the FBI a single answer, and they never nailed him down to say on November 15th, did you talk to Mohammed Khaled about going to Syria? And without that question, we just don't believe that the falsity has been proven at this point. I want to sit down and let my co-counsel address materiality if I may, Judge. Thank you. Thank you, Mr. Kilgore. Ms. Hallmark? Counsel, I'm happy to do this either way, so I leave it entirely to you. I do have some questions about entrapment, and would you like me to ask those now, or would you like to make a couple points about materiality before I do that? Your Honor, I'm open to whatever you prefer, but of course, I have a few things about materiality I'd certainly like to get to. Yes. Why don't we let you get the materiality things out, and then I'll, if you can signal somehow when you've made the point you want to make about materiality, I have a couple questions about entrapment. Yes, Your Honor. May it please the Court, as Mr. Kilgore said, I'm Allie Hallmark, and I'll be addressing the issue of materiality. There are two reasons the government failed to prove materiality here. First, even assuming that the statements were untruthful, the fact that a defendant lies is not enough to establish materiality. Second, whenever you're dealing with a false statement to the government as opposed to a private party, the government must prove that the statement is material by reference to the particular agency or officials that were targeted. Now, this Court said as early as 1963 in United States v. Ivey that there is no perversion of a government function that can result from a false statement that is incapable of affecting or influencing that function. In this case, FBI agents created a fictional character. They gave that fictional character's name to Mr. Smith, and then in an FBI interview later asked him about the same fictional character. Now, the government did not argue at trial that this statement, specifically I'm speaking of count two at the moment, that this statement itself was material. In fact, they've never argued that the substance of the statement was material. Instead, there is significant testimony by Agent Godfrey at trial explaining why he thought that it, quote, mattered. It was important to him because he said that he had a whole other line of questions, in fact, that he would have liked to ask. He mentions those could have related to Mr. Smith's fiancee. They could have related to someone he spoke to on the phone. They could have related to a person who drove him to a different meeting. He lists an entire slew of lines of questioning that he believes he would have asked or that he could have asked. He says there are unlimited number of questions that he could have asked. So, counsel, imagine that, at least I'm sympathetic to your argument, that this baseline of truth thing is not sufficient to establish materiality. But then let me address what I think is my concern about your argument. Do you agree that the Supreme Court has said, and I think this court has said, the question is not whether this actual statement actually impacted the government, but the level of generality is at least one level higher. Do you agree with that? I mean, obviously, in this case, it can't mislead the government because they know full well this is a fake person. So, but do you agree that alone is not sufficient to make it not material? To clarify, make sure I understand your question correctly. It is correct that you do not have to show that it actually influenced the investigation or the agency or a decision of the agency. But the government must prove that the statement was or had the capability of influencing. Was the type of statement right? So, it is not a defense to materiality to say this particular statement didn't influence the government because the government knew full well the moment you made it that it was a lie. I disagree with that, Your Honor. In United States vs. Fungi, Justice Scalia explained and he put material and fact in italics and said, what must be material is the fact that was stated. Well, the fact that was stated, I agree. Well, counsel, let me take Brogan, for example. The moment Mr. Brogan lied, the government knew he was lying. I mean, that was kind of the whole point. It was a quasi-perjury trap. They went to his house, asked him to lie. The moment he said, I did not do this thing, the FBI agent absolutely knew for certain that Mr. Brogan was lying. And that was still a material false statement, right? Understood. Yes, Your Honor. And so, there are cases, I agree, there are certain cases where they have found that a statement like this one could be capable of affecting agents. Right. So, what is the level of generality for us to ask? So, if the question is not whether this particular false statement actually influenced the government, how would you describe the test? It seems like we have to go one level at least up. And what's the level? And my concern is that at various points in your brief, I detect this, we know this actual statement didn't influence the government. But I don't think that's the right question under the Brogan and other cases like that. So, how would you phrase the test we're supposed to apply? Your Honor, we would say that the test isn't so much focused. It's not focused solely on the statement. It's the statement in the context of the recipient of the statement. And so, as this court said in United States v. Raza, you have to look at the statements of effect, intended or likely effect, not intended, it's stated the actual or likely effect on the recipient in that case. And so, here, you have to look at both a statement. In this case, we're talking about FBI agents. The statement is about something that the FBI agents made up themselves. The statement is being made to the exact same FBI officials. And so, what you do there, I would say that the argument that it is the type of statement in the context of FBI investigations is particularly problematic. And that even though in certain other cases, they have said that it is the type of statement, that simply doesn't make sense in the context of FBI investigations where we know what the statement was and we know exactly who heard it, why they were asking the question. And here, we know that they made it up. And so, it is significant in this case, though, that even if there are other explanations that the government would like to submit, explain what would be material, that isn't what happened here. Agent Godfrey does not give any actual testimony explaining how this statement was capable of influencing the FBI, other than the fact that it made it where he could not establish a baseline of truth. In a sense, these questions were control questions, almost like in a polygraph test. They didn't really care that much about what he answered. They cared if he lied. That is what mattered to them. And so, what's wrong with that as a basis for supporting materiality? Your Honor, given that the statute itself says that it must be a material fact that then has a natural tendency to influence, you have to look at the substance of the statement, which is precisely what the Court said in United States v. Kunjes, and what applying that same logic, the District of Virginia, now Senior Judge Ellis said in United States v. Nazarkacki, where he said that the fact a defendant is untruthful cannot be the materiality. That would be a different element. That's the element of falsity, perhaps goes to the element of knowingly or willingly. But it doesn't go to materiality of a statement. Well, let me just be sure I understand your point here. Is it that it can't be the case because that would essentially mean that in every case, every false statement would amount to a material one? Because an agent could always say that it ended up truncating my investigation or it prohibited me from following the line of inquiry. Is that the point? Yes, Your Honor. And kind of to address that in two parts, given what you just stated. First, as you pointed out, the agent could post hoc kind of say, well, this kind of stopped me from going down a line of questioning. And we know several years later, Agent Godfrey is sitting in front of a jury explaining what he said was an unlimited number of questions he could have asked. We don't actually have any idea and we're required to speculate as to... What about if the questioning just stops the investigation altogether because the agents take the statements at face value? In meaning that they did not know they were lies? Right. So that would be a different situation because as this court said in Raza, you'd look at the actual or likely effect on the recipient. And so if the recipient was a person who didn't know anything about the situation or more broadly... Well, but the investigation here was centered on whether or not your client actually intended to go to Syria and do the things that he allegedly boasted about. And so if they, as a result of the responses to these questions, decided, well, it's time to move on. This is not a fruitful investigation. Why isn't that material? Your Honor, first, I would... This case involved a much broader investigation than just that very simple question. It involved questions of material support in terms of the buddy pass. It involved a number of different issues about whether he planned or what he may or may not have could have done to support a terrorist organization. And so if we were in a situation where you have to look at, I think what you just described, and then let me back up just a little bit to make sure I'm understanding your question. If what he had said had caused them to decide that they would no longer investigate any further, you in that situation would have actual influence. Now, if we were using a reasonable person standard, as the government argued in its brief, then you might actually have a different analysis. But here, if you have to do what this court said was a more focused analysis and connect the statement to the action... Before you... Sorry. So my question may not have been precise enough because I think you've conceded that it doesn't actually have to influence the investigation. It just has to have the potential to influence the investigation. So if it had the potential to shut down the investigation altogether, why isn't that enough to get the government over the hurdle, over its burden of proof? Understood. And to answer that, first, predictably capable and having a natural tendency, we do not believe is something as simple as potential because that leaves open too much speculation about what decision would be made. And the next part of that is we know here and in many situations that something simply having the potential to influence an investigation requires that you actually look at the statement and take the government at face value when it says, oh, that statement had the potential to shut down the investigation. We have to look at actually the statements and actually what was happening in the situation. When you ask if something was capable of influencing the next... I see that I've run out of my time, so I'd like... I think Judge Hyden has a few more questions. Yes. I can go ahead and respond to your questions. I'll respond to Judge Diaz and we'll take Judge Hyden's questions. Go ahead. Yes. Yes. To answer your question, and apologies, Your Honor, to answer that question, we have to look at the particular statement and the particular officials involved. And so when we know that the officials have stated, they actually didn't have any interest in the specific facts in the statement, so in the Buddy Pass. It really doesn't matter what he says. They just stated that because he answered the question the way he did, they didn't believe him. And now we don't trust him. Because I don't trust him, I've decided not to ask further questions. It requires the jury to speculate that this would have actually had any real influence because all he is saying is I decided not to ask other questions. The government says it forced them to stop. But we don't actually know that because none of the further questions that he wanted to ask relate specifically to the Buddy Pass. They go off on a number of different areas of their investigation that they state this impacted. And so you have to look at the specific statement and connect that to the decision that was trying to be made. But they didn't say it stopped the investigation. It said it stopped the questioning of this man at that point, right? Yes. They said that it stopped them from proceeding with other questions that they wanted to answer if they thought he was telling the truth. There's no difference that if he had been silent. If he had said nothing, I guess that would have stopped it too, right? Yes, Your Honor. In fact, if he had said nothing to any of the questions, they could make the exact same argument that they're making today. Your silence stopped the investigation. I just had one. Do you agree that serving his girlfriend with a subpoena standing alone would be insufficient to establish entrapment? I'm just trying to make sure I understand the theory of entrapment. Can you restate the question? Sure. So I guess I'll phrase this differently. For purposes of entrapment, you have to show inducement, or you need to have a prima facie case that there was inducement. And I just want to make sure I understand what the defendant's theory of inducement is in this case. What did the government do to induce this crime? Understood, Your Honor. The entrapment instruction issue about whether he would have actually gone and done an interview does require that inducement. Let me rephrase. The entrapment discussed in this case was that the government, after harassing his girlfriend at her work, at her home, and then eventually serving her with a subpoena, and we know separately saying she's the weakest link, this is how we push him to come talk to us, that essentially after that, he finds out she has a subpoena and goes to the interview. So that was the theory of entrapment in this case. You said, does that meet the standard for an inducement? And we think, Your Honor, that that merely should have been an instruction that the jury could have. No, I understand. Not whether the defense would succeed as a matter of law. I understand. Correct. But you do have to make a prima facie showing to get the instruction. Yes. Yes, Your Honor. And I will save any remaining time for my rebuttal. Thank you, Your Honors. Thank you, Ms. Hallmark. Ms. Wray? May it please the Court, Amy Wray for the United States. Your Honors, I guess I'll begin with materiality, and I want to make a couple of— in the government's brief that I'd like to ask you about. Does the government agree with the Third Circuit's holding in Castro? Yes. Okay. And since it's not addressed in your brief, I'll say, how do you distinguish Castro from this case? So the question on materiality is— No, I think Castro— I mean, sorry, on falsity, is whether or not it is absolutely false. And so in Castro, the question was, did you obtain money from Mr. Encarcion? And the answer was, yeah, no. And, in fact, that was true because there was another agent who was there. It was not actually the defendant. It was a government agent that he had obtained money from. But this Court recognized in Sarwari that the actual truth defense is very narrow. And, in fact, if it is ambiguous but susceptible to more than one meaning, then the defendant can't establish that defense. So the difference in this case— excuse me—is that the defendant said—and I guess Your Honor might be referring probably to the Hillel statement, count two. Yeah, there are questions about, were you aware that a person was going to do X, and that person is, in fact, a fictional person who does not exist? So the question is, how is that different than Castro? It's different than Castro because it's ambiguous in terms of whether or not—the question really went to, do you know how this buddy pass is going to be used? And his answer was, no. And, in fact, he did. And so the question in Castro was far narrower, and it was far more precise. And here, what this Court has held in Sarwari is, if it is ambiguous but it is capable of being interpreted in two different ways and they could agree on it, that's not enough to show the actual truth, the literal truth defense. What about if the question itself is ambiguous and lends itself to more than one response? Then it's the jury's decision. And that's what this Court recognized in Sarwari, is if it is ambiguous and it lends itself to more than one response. Now, there are cases, for example, where it is very clear from the context that the intent—that they were on two different pages. There's a case about prepare. I think that's in Hairston. This Court's decision in Hairston. And it was about who prepared this document. And it was clear from the context that the defendant and the prosecutor meant two different things. They were just on different pages. And this Court held that statement wasn't false because it was obvious that the defendant wasn't understanding prepare in the same way that the prosecutor was. Here, it's not that obvious. And where it's not obvious, then it is the jury's determination. So you wanted to start with materiality. I had a question about materiality. Sure. Sort of following up on my question of your colleague, which is like, how would you describe the level of generality? So I understand, I think we've said, I think the Supreme Court has said, the question is not whether this actual statement actually influenced anything. So we have to say whether this is the kind of statement. And so I guess, could you take a shot at telling me what you think the kind of statement at issue in this case is? What is the level of generality at which we ask that question? I think, Your Honor, that the level of generality is that we have to consider the agency and the perspective of the agency. So it's subjective to the extent of, it can't be just anyone. Would it be material to anyone? It has got to be material to this particular agency and its objective at that time. Now, what the Supreme Court recognized in Brogan, and I appreciate Your Honor bringing that up, and I want to read Justice Scalia's statement because I think it's very responsive to the defendant's argument about materiality. He says, we cannot imagine how it could be true that falsely denying guilt in a government investigation does not pervert a governmental function. In other words, when it is in the context of an investigation into something, that is different from any lie. It's not any lie. But when they are investigating, in this case, ISIS, and that's the level of generality that I would respectfully suggest is appropriate here, is this is the FBI, and the defendant knows the FBI is engaging in an investigation into ISIS. And so, and into, you know, this person and a number of people. He's actually aware that they're also investigating the Kodamatis. And so, at that level of generality, would his statement that he did not plan or ever discuss going to Syria, or that he didn't know that this buddy pass was going to be used to transport somebody, Judge Gregory, I see a question on the tip of your tongue. Ms. Ray, the problem here is, not only is the question a problem, it's muddled. As you admit, you say, I think you want to, as Hayden said, well, I guess the jury has to decide that. But it's muddled because in the instance you're talking with Justice Scalia, we thought there, at least there was denied guilt of a crime. What crime is there? Is there a crime to buy, for example, a ticket to someone to another place? What is the crime? Oh, it's absolutely a crime to offer material support to a terrorist organization, Judge Gregory. And that's exactly what he was attempting to do. You didn't ask whether he knew he was a terrorist, did you? You don't have to ask the ultimate question. He's asking a fact. Did you know that this buddy pass was going to be used to help someone get to Syria to assist ISIS? Oh, he said I did not know what he was going to do. That's why he explained. He said, and he gave the analogy, it's like a friend of mine. He leaves from North Carolina and goes to New York. I don't know what he's going to do. You didn't ask were you ever told. See, the government never asked questions that you could actually tangibly attach falsity or not. He said, as a matter of fact, it started this way. So we knew that you, we knew, we knew we had information that you and when. I don't think that's even a question. They told him everything they knew. And then he said, no, I didn't know. And then the next question he taught me, he said, he explained what no means. I don't know. For example, if someone told you, you know, that they were going to New York, you know, and then I asked you the question, did you know they were going to New York? The answer is no, I didn't. You didn't ask me. Did someone tell you they were going to New York? That's different. Your Honor, I want to respond to that in a couple of ways. First of all, I think it's a matter of logic. If someone told me they were going to New York and you said, did you know they were going to New York? My answer would be yes. It wouldn't be you didn't tell me that. But I want to just say one thing, which is this court not very long ago at all, in a case called Doe versus Fairfax, talked about knowledge. What does knowledge mean? What does no mean? Well, it's susceptible to two different interpretations. One is objective and one is subjective. And under the subjective, it is the condition of understanding or believing in the existence of something. It is not objectively knowing for certain. That word no is susceptible to more than one meaning. And if it is susceptible to that, and this court recognized that, it's 1F 4th 257, and it describes that knowledge can be simply a subjective belief in something. And this is the way we ordinarily think about knowledge. But I also want to note that we're not just talking about that statement. We're also talking about, and he did know. I mean, there's lots of evidence that he did. Can I ask you that question, just the government's current argument of materiality? It seems to me that the argument you made a moment ago about materiality is clearly narrower than this baseline presumption of truth that the agent testified to. And let me explain why. Imagine that the agent said, what did you have for lunch yesterday? And in fact, you know, he had sushi for lunch yesterday. But the agent, but he says, you know, I went to Jimmy John's. And the agent knows he's lying. So imagine the agents were, in fact, following him all day yesterday, so they know full well where he had lunch yesterday. And for whatever reason, in response to the question of what did you have for lunch yesterday, he lies. And the agents now know he lied. So on some conception of a baseline of truth, we now just learn that we can't trust him because he just lied about what he had for lunch yesterday. Do you agree that is clearly not material? I do. Okay. So you agree it's narrower than this? I do, absolutely. It has to be a lie about something that does matter. It does matter to the FBI whether or not he had plans to go to Syria to fight with ISIS. It does matter to the FBI whether or not he was going to use a buddy pass to help fictitious or not, fictitious or real person go, because that's material support. It's an attempted material support. So the analogy to the, I think your colleague described it as the control questions in a lie detector test, doesn't really fit completely because the questions at least have to be relevant to something that matters to the investigation. That's right. It has to be capable of influencing the investigation. And here the investigation was into ISIS. We also can't make the investigation so narrow that it requires proof that it actually affected the decision. And this court's made that very clear. I have a couple questions about entrapment. Do you agree that if he had been, let's say that he actually bought the plane ticket for the fictional individual or that he did something, would you agree that if he was being prosecuted for material support of terrorism, he would have been entitled to an entrapment instruction? Because it seems pretty clear to me that if this were a material support prosecution, he would have been entitled to an entrapment instruction. I'm not sure about that because he would have had to have a lack of predisposition, Your Honor. So you might get there on the inducement. Fair question. Would you agree that he would be entitled to it on the inducement prong? This seems like a lot of inducement. If it's a material support prosecution, this would seem like a lot of inducement. That's fair. But, of course, to get the instruction, you also have to be able to show that he had no predisposition. I mean, that's absolutely a closer case if it's a material support prosecution. But I think that here the prosecution, of course, is for telling false statements, and he asked to come in to tell those false statements. Let me ask you about this case. So the entrapment analysis in your brief on the inducement question, it literally starts at the moment he picks up the phone and asks to come in. Your brief discussion of this issue ignores literally everything that happened before that moment. What is the support for doing that? Why would we possibly pretend that we don't know all of the things that happened before that moment? I don't think you do, Your Honor, and I don't think that's – I thought that at least in the statement of facts I set out things pretty more exhaustively. So in the argument, yes, I picked up with that moment. But, no, I think it's fair. You go back and look at the entire context. Was the person induced? But even if you do that in this case, she's issued a subpoena at her mom's house, Ms. Sheff, and as soon – on the same day that subpoena goes through. Now, they had made numerous attempts to reach him personally, and he had none. Well, then let me ask you about things that happened before that day because I – so I'm just going to give you some pages from the SJA. Page 16, the informant. Keep yourself down. Don't talk to nobody about this because some people, they just get arrested because of their meth. That's pretty clearly telling him not to talk to the FBI about what they've been talking about, right? Well, sure. Okay. And is that not inducement? No. I don't think that's inducement because he's not saying lie to the FBI. But even if he were, the question is, is it inducement and did he have a predisposition? And we're talking about actually lying. We're not talking about silence. We're not talking about an investigation where he simply didn't talk. But why – at least, again, prima facie, because the question is not whether he succeeds on the merits, whether a jury is legally compelled to fine him. It's whether he's entitled to an instruction. I mean, why wouldn't a decent argument that he wasn't predisposed to lie, the fact that he asked to come in to talk to the FBI and apparently admitted to a whole bunch of things that made him look not super great, I mean, why isn't that itself in a weird sort of way indirect evidence that he's not predisposed to lie to the government? I think we know that he's predisposed to lie because he lied throughout that interview. So I don't think it's enough. If he asks to come in – Well, wait. The government can't use the fact that someone committed the crime to show that they were predisposed to commit the crime because otherwise you'd never have an entrapment defense. Well, that's fair, Your Honor. But I think that in the context – I mean, first of all, I'll say this. It's very difficult to find a case where there's entrapment in a false statement context. And so, you know, at the end of the day, how do you – But the government acknowledges that in principle you could have entrapment. Theoretically? So, for example, if someone said to me – for example, if an undisclosed government informant said to me, Toby, you're my best friend. We've been best friends for years. If you walk into that room tomorrow and tell the truth, I'm screwed, Toby. I really need you to lie to the FBI. And it turns out the person who said that to me was, A, someone I thought was a very close friend, and, B, an undercover informant. You would not say that in principle I couldn't get an entrapment instruction, would you? I think that's a much closer case. I think that you still have to show a lack of predisposition. And I think, in other words, you probably have to – I have a big argument with my supposed friend, and I say, I can't possibly lie to the government. You know how important my integrity is to me. And then he wears me down and says, you've got to go – I know you've got to do it, Toby. You've got to lie for me. So I think that might well support an entrapment instruction. If there's ever one in a false statement case, that might be it. Judge Gregory. In the context of this case, though, you want to talk about context, it started with his interest in helping and wanting to concern for a family that was living in Syria. Your Honor – The predisposition wasn't any terrorism. Well, predisposition, you can't have it both ways. The very – Because you started this. You had the informant talk to him, rev it up, the goal from interest in a family to now – are you shaking your head? Was he not concerned about the family, the friends he had visited earlier? He specifically testified – two things. I'll respond to that. The first, the way they found out about this gentleman is because he talked to a Kareem in Memphis and said, I want assistance in going to Syria to fight. And then when they ask him, the Khalid asks him – Well, it's – that they're not sure about. But what they – that's why they followed up later. And when he – Khalid asks him, Judge Gregory, specifically, if those people are not going to fight for ISIS, your friends, would you still go there? And he says, yes, and I would still fight. That's the answer to your question. He is specifically asked by Khalid – I mean, part of the context of this is the government and the FBI the entire time was trying to figure out, is Mr. Smith actually serious about this? And how serious? He put the idea of ISIS in his head first, didn't you? Well, he talks – no, I don't think so. The idea of ISIS was first put in his head by the government. No. He asks – when they ask him about this family and they say – he says, where does he live? And he names the village. And they – he says, well, who's in the village? In other words, is it Assad's regime, is it the resistance, or is it ISIS? He says it's all three. It's the brothers. He describes them as brothers. And he's talking about ISIS. That's what Khalid – He asked the question of who was in charge of that town. He didn't say, are you going to fight ISIS? He said, who's in charge of that town? And in response, Mr. Smith says it's – there's Assad's regime, essentially. There's the resistance and the brothers. And he testified, Mr. Khalid, that it was clear from the context that brothers meant ISIS. And it did. And, you know, it's not – he says over and over again – he talks about jihad. Are you comfortable killing and being killed? Yes. I'm comfortable killing and being killed. They didn't put that into his head. They didn't – they didn't somehow create his desire to go over – yes, he wanted to talk about his – he wanted to help the Kodamatis. But he was also asked specifically, if they're not fighting for ISIS, will you still? Yes. If they're not fighting what? He said – they said – No, they said, if what? If the Kodamatis are not fighting for ISIS, are you still interested in going? Are you still – do you still want to go to fight for ISIS? And his answer was yes. His answer was yes. And I can find that in the – As I said, the idea of fighting for ISIS was first introduced by the government. Is that – you just admitted it. No, no, I didn't just admit that, Judge Gregory. You did. And then you said, well, if that family is not fighting for ISIS – That was well into the conversation. The early part when he talks about the family – He wasn't charged with terrorism, but he was – basically, the jury was – you burlesque the whole case with terrorism, and then he's charged with and convicted of a discrete instance of lying two places. But then you put all this in front of the judge. And then you said, that's why you can comfortably say, well, let the jury decide. What are they really deciding? Whether this person is a bad person or whether they lied materially then. That's the question. That's what he's charged with. That's the problem with cases like this. You take these cases and you try all around. But this is only about – am I correct? It's whether or not this was false and material. 100 percent, and that's exactly how the court was instructed the jury. The jury was instructed to find, did he lie on these two specific occasions, not just an occasion, but in these various statements. Did he lie? And was it material? We weren't asking whether or not – he was never – they actually were involved – asked whether it involved terrorism. But the jury was instructed that these offenses were about making false statements. That's fair. He did make false statements, and they were material. And they were material as to a matter that the FBI was investigating. They would naturally be material to that. Let me give you a hypothetical. Let's say if you – the federal agents were looking at a particular city. It was called City X. And they were looking at people who had surnames that were Arabic surnames. And they went through and just made calls to people. And said to him, sir, have you ever had any social dealings with people that are connected, but a name of a person, for example. Have you ever met this person, for example? No, I have not. Okay, so then – but they're investigating terrorism generally, like here, because it's generally. And he says no. And then that person doesn't even exist. And you say, well, I want a baseline of his truth. Whatever. And you find out that he did know this person. I'm sorry. I thought you just said he didn't exist. He did know. He did meet the person. So the person exists. The person exists. Right. And he says, I never met the person. Okay. That's all he said. That's material because then you had to stop your investigation? Well, I think that, first of all, we have a lot more than that here. That wouldn't be hypothetical if it wasn't. No, but I do want to be very clear that that's not even close to this case. But let's say – It's worse than this one, perhaps, because you're more involved from the front end in terms of fictionally putting people who didn't exist in those things. But go ahead. Your Honor, that's a question for the entrapment. I mean, let's get clear about sort of the legal question that we're talking about. So I think your question goes to materiality. And see that my time is up. If I may. It's material. And since you come to court and said, well, you know, if he had told the truth, we could have done more. That's all you're saying here. And the government's brief is different than what the agents seem to have testified because he solely said it's material because I would have asked this question and that question. So basically come in and said, well, if he had told us that he really knew him, then I would have checked further. Who else do you know? You know this person. How long have you known other people? You can easily do that. There's no limitation. Sure. I want to respond. The reason the government's brief is different is because the standard is an objective standard. Once you get to the point of the agency's perspective. So we weren't confined to Agent Godfrey's explanation of why this actually affected him because it didn't matter. At the end of the day, we don't have to show how it actually affected him. So I was bringing in a broader. Did at all. That's right. 100%. We did not have to show that. And so I, on appeal, bring in other reasons why it would naturally affect an agency who is investigating the threat that ISIS poses to the United States abroad and here. You can prove this case by a total hypothetical. It is. The question that the Supreme Court and both this court have recognized is pertinent is does it have a natural tendency to affect the agency, that particular agency, not just any agency, in whatever endeavor that agency is engaged in at that moment. And in this case, it was an investigation into ISIS. Happened to be an investigation into the Kodamates, into a particular group of people that the FBI was concerned about. And Saeed Kodamate was arrested right at the same time that we were talking about the Buddy Pass in March. What was the language of the jury instruction on materiality? I'll give it to you, Your Honor. It was on page 989. And it is a statement is material if it has a natural tendency to influence or is capable of influencing the decisions or activities of the government agency to which it is addressed, in this case the FBI. It is irrelevant whether the false statement actually influenced or affected the FBI's decision-making process. The FBI need not have been actually deceived by the false statement. A false statement may be material even if the FBI knew the statements were false when they were given. And this court has recognized not only that, but even if the investigation is effectively over and the statement is false and the FBI or the government agency knows that it's false, that's enough. Understanding that you say this case has much more to it, I may have missed the answer to Judge Gregory's hypothetical about the random call. I didn't fully answer that, Your Honor, so let me attempt to do that now. I think that if it were a single person, it would depend on if that person exists, how tied they were to how critical that was to the investigation. I mean, again, it's an objective standard. Is that lie, would that be considered by that agency? Would it have a tendency to influence the agency's conduct? And without knowing more about the investigation, it's very hard for me to say whether or not simply denying the existence of a single human being would be enough. Basically, it's ethereal. If the law is what you say it is, then there's no limit at all. You could pick people out by surnames or Arabic names and just ask a question that you even might know enough to tee up, oh, you didn't tell the truth. And then you say, well, who controls what your investigation is? You. Sure. And who controls how broad it is and what it means? You. What protection is there in terms of what the framers would say? I think you can't win this case. The instruction itself. Well, you know, it doesn't have to be a lie. It doesn't have to be deceitful. We don't have to believe it. What else would the juror say after you put all this stuff for less about terrorism in the case? Who would be left to even decide? Your Honor. You can find this man guilty as long as he said something. Said something. You can find this man guilty if he lied and if that lie was material to an investigation. And that jury instruction, Your Honor, comes straight from this Court's decisions in the Supreme Court. And the defendant did not object. It's a fair statement of the law. It's a fair statement of the law. And that's your protection. And the reporters are replete with cases where we didn't do it well enough. And the defendant relies on this. You had the information clearly. This is one, I guess, is amazing on steroids case because you had all the information. That's normal in an investigation by a federal agency. We ordinarily do start an investigation, an interview with questions that we know the answers to. And this Court has held that's okay. And that can be if you lie about those questions, if you lie in response, that's material. If you lie about, again, in this case was if you lie about something that influences the baseline of truth. No, it's not just the baseline. As I said in response to Judge Diaz's question earlier, it can't be anything. It does have to be a statement. Let's get clear. Because they were told it had to have a natural tendency to influence the investigation. What the FBI was doing here. He says, I never had plans. Never intended to go to Syria. Baloney. He said he had plans. Page 707 to 08 of the joint appendix. He had plans. That's what he said. That's a, that's a statement that could influence an investigation into ISIS. That's that's there's not a big jump here. And then the other question was, did you ever get a buddy pass for someone who you thought and understood was going to go over to travel and fight for ISIS? He says, no, we're not talking about, do you just know some random person's name with an Arabic surname? We're talking about very specific statements and the jury was instructed properly and they were told you got a lie and it's got to be material. And I don't think there was any error in that. Your honor. Screw the law in terms of what this means for all cases like this, not just. Sure. Because it seemed to me this reasoning would, there's no limit to it. I think your honor. No limit to it. I appreciate your honor's concern. I actually do. I think there is a limiting principle and that limiting principle is provided by this court. When it says it has to have the natural tendency to influence that particular agency. Given that age, that is your limitation. The limit, but the problem, as you described influence, that's where it just goes everywhere. There's no limit to influence. Well, I mean, it has to, influence means something. It has to affect. It has to have, it has to have the ability or natural tendency, not just the ability, but it probably would affect the government's investigation. That's limiting. And we may just disagree with that on that point. Judge Greger. That you have a hundred agents working on it. If not in and out of them admit nothing. But then you found one agent say, oh yeah, you know what? That would have meant something to me. That, that, that means the standard, right? No, that's subjective. That the way you just described that your honor is subjective. It depends on whether one agent says, yes, that would mean something to me. It's an objective standard. There has to be proof that it would naturally impact the investigation. So I suppose that. Is that the best evidence of what the investigation is? So that's fair. And yes, I guess what I should, I should revise my answer to say this. If you had, if an agent testified that it would have affected the investigation, that is some evidence as to what its natural tendency to be. But let me say this, the defendant could also present evidence that it wouldn't affect that investigation. The defendant had every right to put up. You can put up former agents. You're going to talk the agent out of whether what was important to them. No, I, again, because it's objective. You could call any former agent. You could call a police officer. You could call anybody to say that wouldn't affect my thinking and my reasoning here. Okay. All right. Your honor. A dead horse, but let me, I guess I'm a little concerned that about the control questions that have nothing to do with the case at all. I mean, an agent could say. As this one apparently did, even though these were actually relevant, you say they're relevant to the investigation, the questions. That even those control questions, irrelevant control questions. Essentially have caused me not to trust the, uh, the credibility of this witness and shut down that particular part of the investigation. I can't ask further questions because of it. And so that has naturally influenced the course of this investigation. Why isn't that a problem? I don't think that would be enough. That's not enough. It's the question itself has to have a natural tendency. So your, your honor's example earlier, I think was something about a burger. Maybe I can't remember exactly, but I'm a little bit hungry, but I don't think I said maybe you didn't. Maybe that's maybe I'm hungry and I'm thinking about the burger anyway, if it was something completely irrelevant to the subject of the investigation, I don't think that that's enough. I don't think that would have a natural tendency to influence an investigation into a particular subject matter. So I do believe that there is a limiting principle. I do believe that it has to be an answer that would naturally tend to influence this investigation. Well, we know that in this case, it wasn't because he talked about that, that you're trying to find a baseline of truth. The truth has no limitation. Truth or lying about anything as a baseline of truth. Like I want to see, for example, where you were born. What state were you born in? I know you were born in New York and you say I was born in Texas. Baseline of truth here. Yeah. So therefore that shuts down the investigation because he lied about Texas, New York, and he didn't lie about anything. There's no limitation. Your Honor. I know Ms. Ray, you're a good lawyer as your colleagues and friends are here as well, but it really isn't because you talk about subjective. It's not objective because you as final lawyers, you don't know what they were doing either. In terms of investigation. You don't know the full range of investigation. I don't know the full range. I probably know more than is in the record, but I don't know the full range. But the point is that there's no limit. Because what makes America a great nation in terms of rule of law is that it's tethered to something that people can have a defense to. And what I'm saying, you can't defend this. Because you say, oh, yeah, well, out there in the investigation world, it had an influence. It does, especially when you know the evidence. You bring this man in, you talk to his girlfriend, you have him come in and say, well, we know all these things. We know all this. And you wait for them to say, oh, no, uh-huh, it's material. It's a lie. And therefore that. And then you try and you say that it's a baseline and that this is what I wanted to ask. And then, of course, counsel comes in and say, no, it's objective. And that's the difference. But your argument is not a limitation. It does not make a limitation on the breadth of this prosecution in this case. It does not. If I may, I know we're going back and forth, and we're probably never going to satisfy each other today on this point. But we do. We do. We do. And it's a joy. It really actually is. This is my favorite part of my job. But just one last point. The limiting factor here are the statements themselves. We are not trying to prosecute him for saying he didn't have a hamburger this morning. We are prosecuting him for saying that falsely testifying that he never intended or discussed with anyone going to Syria to fight with ISIS. That's the limitation. Before you sit down, could I ask you something about multiplicity? Sure. Are you familiar with this court's decision in the United States versus Mason, 6-11, F-2nd 49? I'm afraid I'm not. So the question basically is, what's the unit of prosecution? Right. So I guess I will ask you just to take my word for that in this case. This court was confronted with the then version of 18 U.S.C. 922-A-6, which I think is the Felon in Possession Statute or something. This case is from 1979. But anyway, this court said in that case, quote, the statutory language, any person, and, quote, any false or fictitious oral or written statement is ambiguous about the unit of prosecution. Right. So why doesn't that – and, you know, there's a series of cases. The Supreme Court has a case interpreting the Mann Act, which says bringing any person across state lines. And the court said even if you bring two people, that's only one unit of prosecution. I think this court has said the statute that says possessing a firearm while a felon, even if he possessed ten firearms, that is only one unit of prosecution. Right. Why don't all of those cases suggest that this is one false statement, not multiple false statements? So let me – I will respond by saying I didn't realize – remember the name of that case. Sure. But I am familiar and did do some research into what any means and how it can be construed. And I did better research in preparation for oral argument, I confess, than I did when I wrote the brief. That said, I think the answer is statement. Singular. It's any statement. And, you know, at the end of the day, this is, we would say, harmless. But wait, hold on. That doesn't distinguish this case at all from Mason. The statute that you showed Mason also said any statement. I agree. I think that it's also a question of proof. So if you have different statements – if it were a close enough statement that you wouldn't have to provide different proof to prove it, here it's very different statements. One is about whether or not he talked about – But in Mason there was different proof. These were different forms filed out on different dates. Yes. And I can – my best answer is, one, no court has ever held – and, in fact, we've got several courts holding that the unit of prosecution is a single statement, even if they're made in the same interview. So I will say we've got including an unpublished Fourth Circuit decision on that point. So I'd say we've got law on our side. Second, even if it were multiplicitous and this court were to hold so, it's certainly harmless in this case where the court made clear that it actually started from the lower guideline range as if he had only been – not guideline range, statutory maximum. He started at 96 months instead of 102 months, and the court said, I'm going to sentence him as if he were only convicted of one offense. So I don't think this court needs to reach that issue, the legal issue. It could simply agree that it's harmless even if it is error. But I will say that this court and the Ninth Circuit, and I believe it was the Second Circuit, have all held that the unit of prosecution under Section 1001 is a single statement. That requires different proofs. So if it were two statements that were very similar, then that would – So you would agree that if during the same interview he tells the exact same lie twice. Yeah, yeah. That's not – That would be multiplicitous, Your Honor. Yes. If Your Honors have no further questions, we request that the court affirm the judgment of the district court, and thank you very much for your time. Thank you, Ms. Wray. Mr. Kilbourne? You're not going to speak? Oh, I am. I was just – Okay, well, my new thing here says you're coming up. Apologies. Maybe the clerk hadn't updated it. No problem. Okay. So, Your Honor, I think the first thing I'd like to address is the discussion on kind of a reasonable person or an objective standard. The government says a number of times that the standard should be if the statement itself would have been relevant or if it's something that mattered to the agency. Now, the Second Circuit in the United States v. Litvak discussed this exact situation. Now, when I say exact, I don't mean the exact situation of an FBI agent investigating. What I mean is where an agency says that this lie was important to us, this lie matters to us. And the court there said it doesn't really answer the question of materiality. Relevance is not synonymous with materiality. There must be an additional – there must be additional facts showing the actual influence that took place. And here, even if we were to look at some kind of objective standard, and we vehemently disagree with the courts or the government's argument that this is a simple reasonable person type or reasonable agency type of standard. Counsel, can I just ask as a threshold, do you agree with the government that the instruction as given – I understand we're debating the sufficiency of evidence, but do you agree that the instruction as given was legally correct? So, Your Honor, I would say I wouldn't have written it that way. The first sentence of that instruction is the exact standard for materiality. The use of the word FBI as opposed to specifying FBI agents is something that I would have challenged myself. However, if we look at this court's decision in the United States v. Raza, it does not use the language that the government has today, that you look at the agency, right, here the FBI. You certainly agree there was no challenge to the jury instruction. There was no challenge to the jury instruction. But what the language in the standard for materiality is it has a natural tendency to influence the decisions of the agency, and this court has said, and that includes the particular officials that were targeted. You don't just say generally the agency. But I would add, even if you were to look at a reasonable type of standard or an objective type of standard, in Raza, the court also discussed what that would mean, and there it was a bank. And they said, we don't look at what the bank did or what they thought. We look at the reasonable person, the reasonable bank, in that bank's position. So either way, apply objective, apply subjective, whatever you want to call it, at the end of the day, we know the FBI agency, the agency was in the position of knowing all of the information, especially in count two, that he gave was made up by them. And they say themselves, the reason we cared about this, specifically the agent says it is his strategy. He says, and I quote, pretty much every interview I've been involved in since I've been an agent, we ask people things we know the answer to because we need to discern if they will be truthful with us. I hope that he doesn't get a 1,001 out of every single interview he has because he's saying that his strategy is to ask those types of control questions. Now, he could have asked them about someone's lunch, but he chose to ask them about something that's, frankly, not particularly important either because they already knew the answers because they made them up. There would be no further investigation into Mr. Hillel because Hillel did not exist. Perhaps if that had been a real person, then there could have been another line of questioning specifically relating to the topic that the question related to. But there wasn't here. And, in fact, that exact distinction is what makes this case very different from some of the other cases involving FBI investigations where the government was actually still looking into other people and the statement related to those people. Here, the other individuals or groups that the government references and what Mr. Godfrey talks about in his testimony, they're all other topics. He says other lines of questioning, and he lists them out. They go for about 30 pages of the joint appendix, I believe from 801 to 830. He lists all of these questions and says there are unlimited questions I could have asked. Now, based on the logic that the government is putting forth, they say that the limit is that it has to be the agency. But here we know we cannot ignore the fact that the agency in this situation, in its position, it knew that the information he was giving itself didn't matter. And what's most important, the government can't make a new theory today on what made something influential, what made something material. They're stuck with Agent Godfrey, who said, I would have asked an unlimited number of questions. Wait, what's the authority for that? I would have thought that the jury was correctly instructed and the jury found him guilty, so we have to construe the evidence and make all reasonable arguments in favor of the verdict. What argument is there stuck with what their FBI agent said on the stand? What I mean is, well, under a sufficiency of the evidence standard, the jury, a rational juror, must find, we have to determine whether a rational juror applying the proper legal standard would have found. So what we're talking about, of course, right now is what is to understand the legal standard and make sure that they applied it correctly. The government wants to argue that the legal standard today is that it would be capable of affecting the FBI generally and that this statement about a buddy pass given to a fake person is the kind of statement that could influence the investigation. But in reality, we know that they did not argue that. And under, let's see, it's under U.S. v. Ismael out of this court in 1996, the court said this must be fully supported by the evidence. And Chiarella v. United States in the Supreme Court said the court here cannot affirm a conviction on the basis of a theory that wasn't presented to the jury. And here, the theory presented to the jury time and time again is that Agent Godfrey decided not to ask additional questions. He decided to. No one stopped him. And, in fact, it's a little bit frustrating to me that when someone made the ambiguous nonresponsive answers that Mr. Smith did, as my co-counsel discussed, that they said that they didn't proceed forward. And I will note, and this is a little bit of an ancillary, but I believe it's also important to look at the problem with allowing this type of standard. The government argues this baseline of truth. And it's actually the argument made for both counts. A baseline of truth, however, if we discuss it at what it should mean, my understanding, would be that because of the answer to this question, I decided not to go forward. Well, we have two counts here, and it's a little bit unclear as to which thing was the true baseline that stopped them from asking further questions because there are two counts in this case. There are more questions asked. It was an over two-hour long interview. And so if we have this type of rule that the government wants to put forward, there are very few limits on what could be material because it becomes extremely hypothetical and essentially reduces 1001 to a perjury statute. And, frankly, if the United States Congress wants to amend 1001 or pass a statute called lying to the FBI, then they should do that. And, in fact, I'll note that that's exactly what the government says in their brief. They said the jury convicted Mr. Smith of lying to the FBI. And I think they might have because they didn't follow the materiality standard. You don't get to understand this, right? I think my understanding is that she said that counsel said it was an objective standard as to whether or not it was material to the investigation, but then they use a subjective standard to convince the jury because then you have him say, well, this is what I wouldn't have. That seems very subjective. That's what the jury was influenced by, what this one person thought. I would have gone here, here, here, here, here, here. And so this projecting subjectively what the questioner would have done is about as subjective as it can be. Yes, Your Honor, and, in fact, based on that standard, there's an argument that a reasonable agency in the position of Agent Godfrey should not have been influenced by that statement. And so perhaps under an objective standard, if the court chose to follow one, would find that Agent Godfrey wasn't a reasonable person in that situation. It would be almost impossible to say that someone would be influenced by something that they completely made up and that the only influence that it had was that they decided to not ask additional questions. And so here, Your Honor, we are simply asking there to be some limitation. The government is free to use different investigative tactics. They're very common in these types of cases. They lie. They have informants. They have undercovers. They make up people. But that doesn't mean that we should translate every interview relating to those investigations into 1001 convictions. Mr. Smith is in prison under a 60-month sentence, two counts. And if this court even overturns one of those counts, it is not harmless error. This must be remanded under the United States decision, United States v. Rutledge. There are two convictions. There are collateral consequences for his convictions. There are also two assessments in this case. And this court also stated in the United States v. Adams, referring to the Rutledge case where one count, the individual is found to be actually innocent, they could not say because of the concurrent sentences that it was harmless. This case must be remanded. Now, Your Honors, if you have no further questions, then I'll be happy to sit down. But if you do, then I'm sorry. Thank you, Ms. Hallmark. Thank you. We ask the court to reverse the decision of the lower court. Thank you. Mr. Kilbourne, I note that you're a court opponent. And I just want to say on behalf of the Fourth Circuit, we thank you so much because we rely on lawyers like yourself to take these cases. And we appreciate it very much. And, obviously, Ms. Hallmark, I appreciate your arguments. And Ms. Ray, arguably and ably defending the United States. And we'd love to come down there and greet you in our normal fashion, but we can't. But please know, nonetheless, that we are very much appreciative. And thank you so much for being here today. And we wish you well. And stay safe. With that, I'll ask the Deputy Clerk to adjourn the court Saturday night.
judges: Roger L. Gregory, Albert Diaz, Toby J. Heytens